IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAULA CRAWFORD<br>1035 E. 19th Avenue<br>Columbus, Ohio 43211<br>    Plaintiff,<br><br>  v.<br><br>CHARTER COMMUNICATIONS, INC.<br>1015 Olentangy River Road<br>Columbus, Ohio 43212<br><br><br>  **SERVE ALSO:**<br>  CHARTER COMMUNICATIONS, INC.<br>  c/o Corporation Service Company<br>  50 West Broad Street, Suite 1330<br>  Columbus, Ohio 43215<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**(JURY DEMAND ENDORSED HEREIN)** |

Plaintiff, Paula Crawford, by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

## PARTIES

1. Plaintiff Crawford is a resident of the City of Columbus, County of Franklin, State of Ohio.

2. Defendant Charter Communications, Inc. ("Charter") is an Ohio for-profit corporation with its principal place of business located in the City of Columbus, County of Franklin, State of Ohio.

3. Charter was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.

4. Charter was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 12101 *et seq.*

## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Crawford is alleging federal law claims under the Civil Rights Act of 1964, 28 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*.

6. All material events alleged in this Complaint occurred in Franklin County, Ohio.

7. This Court has supplemental jurisdiction over Crawford's state law claims pursuant to 28 U.S.C. § 1367 because Crawford's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Crawford filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00593, against Charter ("Crawford EEOC Charge").

10. On or about December 30, 2020, the EEOC issued and mailed a Notice of Right to Sue letter regarding the Charges of Discrimination brought by Crawford against Charter in the Crawford EEOC Charge.

11. Charter received her Right to Sue letter from the EEOC on or about January 2, 2021, in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Crawford has filed this Complaint within 90 days of receipt of the Notice of Right to Sue letter.

13. More than 60 days have elapsed since Crawford filed the Crawford EEOC Charge alleging violations of the ADEA.

14. Crawford has properly exhausted her administrative remedies, pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

15. Crawford is a former employee of Charter.

16. Crawford began working for Charter on April 27, 2018.

17. Crawford was terminated on February 17, 2020.

18. At the time of her termination, Crawford was an inbound sales representative.

19. At all times, Crawford was qualified for her position.

20. Crawford is African-American.

21. At the time of her termination, Crawford was 52 years old.

22. Crawford suffers from post-traumatic stress disorder ("PTSD"), a disability.

23. Crawford is a member of several statutorily protected classes.

24. At all relevant times, Charter was engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C. § 2611(4).

25. At all relevant times, Crawford was employed by Charter for at least 12 months and had at least 1,250 hours of service with Charter and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

26. Shortly after being hired, Crawford was subjected to derogatory comments about her race.

27. During training, her trainer made several derogatory comments regarding her race.

28. Crawford reported these derogatory comments to Human Resources Representative Tim Allen.

29. After reporting these derogatory comments to Human Resources, Crawford was subjected to harassment and retaliation.

30. Crawford suffers from PTSD as a result of witnessing a workplace shooting in 2005.

31. Crawford informed Charter of her PTSD in September 2018.

32. Crawford did so following a meeting with her then-managers, Martin Krause and Drew Smith.

33. After Crawford told Krause and Smith of her PTSD, Smith told Crawford, "maybe this job is just too fast-paced for you."

34. Crawford asked Smith what he meant by that statement. Smith restated his comment.

35. Crawford reported this comment to Human Resources representative Tim Allen and another Human Resources representative named "Ray" in or around late September.

36. On another occasion, a unit manager, Ben Johnson, quizzed Crawford on information she had been asked to read.

37. When Crawford could not recall all of the information she had read, Johnson chastised Crawford .

38. Johnson then called Crawford up to the Human Resources Department and in front of a Human Resources Representative, Johnson again quizzed Crawford on the information he previously told her to look up and read.

39. When Crawford could not recall all of the information, Johnson stated, sarcastically, I would think someone could remember information that was read an hour ago.

40. Crawford's managers wrote her up and criticized her work without just reason.

41. Similarly situated employees who were not African American were not subjected to this treatment.

42. Similarly situated employees who were younger than Crawford were not subjected to this treatment.

4

43. Similarly situated employees who were not disabled were not subjected to this treatment.

44. In November 2018, Crawford requested that people not approach her from behind or stand behind her, because it aggravated her PTSD.

45. Crawford's request was a request for a reasonable accommodation for her disability, PTSD.

46. Charter did nothing to address Crawford's request.

47. On July 23, 2019, Korey Heiselman, Crawford's supervisor, asked Krause and a Team Leader, named Jessica to look over Crawford's shoulder while she was working and check her work.

48. They did this despite Crawford's request that people not stand behind her because of her PTSD.

49. Krause and Heiselman aggressively demanded to see what Crawford was working on while she was at her computer, while surrounding her from behind.

50. Managers, including Krause, Smith and Johnson, would come up behind Crawford and clap very loudly and walk away.

51. There was no reason for the clap, other than to startle Crawford.

52. Similarly situated employees who were not African American were not subjected to this treatment.

53. Similarly situated employees who were younger than Crawford were not subjected to this treatment.

54. Similarly situated employees who were not disabled were not subjected to this treatment.

55. Crawford's PTSD was aggravated, and she suffered emotional distress as a result.

56. Crawford reached out to Allen, the Human Resources representative, to report this conduct the day it occurred.

57. Allen ignored Crawford's communication.

5

58. Crawford again made a request that people not stand or approach her from behind, a request for reasonable accommodation.

59. No action was taken in response to either the incident or the request for reasonable accommodation.

60. Instead of taking steps to correct the behavior that Crawford complained of or to engage in a discussion of reasonable accommodations for Crawford's disability, the behavior of Crawford's supervisors and managers worsened.

61. Krause repeatedly went to Crawford's desk and went through her papers.

62. Krause repeatedly verbally harassed Crawford.

63. Similarly situated employees who were not African American were not subjected to this treatment.

64. Similarly situated employees who were younger than Crawford were not subjected to this treatment.

65. Similarly situated employees who were not disabled were not subjected to this treatment.

66. The harassment and mistreatment of Crawford were so severe that Crawford would sometimes cry at her desk or in the restroom.

67. In 2019, Crawford also was the victim of sexual harassment by her mentor at the time, Tiara Acoff.

68. Acoff often hugged Crawford from behind.

69. These hugs were unwelcome.

70. Acoff kissed Crawford on the neck during one of these hugs.

71. The kiss was unwelcome.

72. On another occasion, Acoff stood up in front of Crawford's desk, while Crawford was working and asked her to give an intimate relationship with Acoff a "chance."

73. Crawford declined the suggestion.

74. Crawford subsequently asked her supervisor to move her seat away from Acoff.

75. Crawford's request was Acoff invited Crawford over to her home.

76. denied.

77. These invitations to Acoff's home were unwelcome.

78. Even while Crawford was on leave, on November 25, 2019 and many other occasions, Acoff used Crawford's email address to place orders with Grubhub.

79. On information and belief, Acoff did this in order to provide Crawford with Acoff's address, which appeared on the orders.

80. On information and belief, Acoff provided her address to Crawford as a suggestion to Crawford to come to Acoff's home.

81. Such a suggestion was unwelcome.

82. Crawford reported this behavior and harassment to her direct supervisor.

83. Charter took no action in response to Crawford's report of being sexually harassed in the workplace by her company-assigned mentor. In fact they promoted Acoff to supervisor.

84. Charter has a policy against sexual harassment ("Sexual Harassment Policy").

85. Charter's Sexual Harassment Policy prohibits retaliation against employees who complain about sexual harassment.

86. Charter's Sexual Harassment Policy prohibits intimidation of employees who complain about sexual harassment.

87. Charter's Sexual Harassment Policy requires employees to report what they reasonably believe is a violation of the Sexual Harassment Policy.

88. Charter's Sexual Harassment Policy prohibits intimidation against employees who report a violation of the Sexual Harassment Policy.

89. Crawford's treatment after reporting the harassment she suffered violates the Harassment Policy.
90. Charter has a policy requiring an investigation into reports of violations of its Sexual Harassment Policy.
91. Such an investigation should include interviewing the person making the complaint.
92. Such an investigation should include interviewing the subject of the complaint.
93. An investigation should include obtaining a written statement from the person making the complaint.
94. An investigation should include obtaining a written statement from the subject of the complaint.
95. In response to Crawford's complaints about sexual harassment, Charter did not interview her.
96. In response to Crawford's complaints about sexual harassment, Charter did not interview the subject of her complaint.
97. In response to Crawford's complaints about sexual harassment, Charter did not interview anyone.
98. In response to Crawford's complaints about sexual harassment, Charter did not obtain a written statement from Crawford.
99. In response to Crawford's complaints about sexual harassment, Charter did not obtain a written statement from anyone.
100. Charter did not investigate Crawford's complaints.
101. In July 2018, Crawford was repeatedly called in to meetings with her Supervisor, Heiselman and Heiselman's manager, Mary Browder. Heiselman yelled at Crawford and criticized her work.

102. Similarly situated employees who were not African American were not subjected to this treatment.

103. Similarly situated employees who were younger than Crawford were not subjected to this treatment.

104. Similarly situated employees who were not disabled were not subjected to this treatment.

105. Traumatized by the verbal abuse, Crawford cried at her desk.

106. Crawford saw her doctor after this latest episode.

107. Her doctor told her that her experiences at Charter were aggravating her PTSD.

108. As a consequence, Crawford requested paid FMLA leave.

109. Crawford's request was denied and she was granted only unpaid leave.

110. Crawford began her unpaid FMLA leave on July 30, 2019.

111. On October 1, 2019, while on FMLA leave, Charter cut off all of her benefits.

112. Charter informed Crawford that she should not return to work until February 18, 2020.

113. On November 1, 2019, Crawford sent Charter a letter inquiring about the status of her leave.

114. In that same letter, Crawford informed Charter that she intended to file a Worker's Compensation claim upon returning to work, based on the July 23, 2019 incident with her supervisor and team leader.

115. Crawford never received a response to that letter.

116. On February 17, 2020, Charter terminated Crawford's employment.

117. Charter knowingly terminated Crawford's employment.

118. Charter knowingly took an adverse employment action against Crawford.

119. Charter knowingly took an adverse action against Crawford.

120. Charter intentionally terminated Crawford's employment.

121. Charter intentionally took an adverse employment action against Crawford.

122. Charter intentionally took an adverse action against Crawford.

123. Charter knew that terminating Crawford would cause her harm, including economic harm.

124. Charter willfully terminated Crawford's employment.

125. Charter willfully took an adverse employment action against Crawford.

126. Charter willfully took an adverse action against Crawford.

127. Crawford had greater abilities and skills than significantly younger employees who were retained by Charter.

128. Upon information and belief, Crawford's performance record at Charter was superior to significantly younger employees who were retained.

129. Charter treated Crawford unfavorably based on her age compared to significantly younger employees who were retained by Charter.

130. Charter's purported reason for Crawford's termination is pretext for age discrimination.

131. Charter's purported reason for Crawford's termination is a pretext for disability discrimination.

132. Crawford's PTSD constituted a physical and/or mental impairment.

133. Crawford's PTSD significantly limited her in one or more major life activities, including working.

134. Because of her PTSD, Crawford has a record of physical and/or mental impairment.

135. As a direct and proximate result of the Defendants' conduct, Crawford suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. 4112.01 *et seq*.**

136. Crawford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

137. At all times relevant herein, Crawford, who was 52 years old at the time of her termination, was a member of a statutorily protected class under Ohio Revised Code § 4112.02.

138. As of the date of her termination, Crawford was fully qualified to perform the essential functions of her job.

139. By terminating Crawford in favor of younger employees, Charter treated Crawford less favorably than other substantially younger, similarly situated employees.

140. Charter treated Crawford differently than younger employees who were retained by Defendants because of Crawford's age.

141. Charter's decision to terminate Crawford was based on an illegitimate discriminatory reason that was totally unrelated to Crawford's experience, credentials, qualifications, or performance.

142. Charter terminated Crawford because of her age.

143. On information and belief, Charter replaced Crawford with younger and less qualified employees.

144. Crawford's discharge allowed Charter to retain one or more younger and less qualified employees.

145. Charter violated Ohio Revised Code § 4112.02 by discharging Crawford on the basis of her age.

146. As a direct and proximate cause of Charter's conduct, Crawford suffered and will continue to suffer damages.

## COUNT II:  AGE DISCRIMINATION IN VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 623

147. Crawford restates each and every prior paragraph of this complaint, as if it were fully restated herein.

148. Crawford was 52 years old at the time of her termination.

149. At all times relevant, Crawford was a member of a statutorily-protected class under the ADEA.

150. Charter treated Crawford differently from other similarly-situated employees based on her age.

151. Charter violated the ADEA by discriminating against Crawford based on her age.

152. Charter violated the ADEA by terminating Crawford's employment.

153. As a direct and proximate result of Charter's conduct, Crawford suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III:  DISABILITY DISCRIMINATION IN VIOLATON OF AMERICANS WITH DISABILITY ACT, 42 U.S.C. § 12101 *ET SEQ*.

154. Crawford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

155. Charter treated Crawford differently than other similarly situated employees based on her disabling condition.

156. a perceived disabling condition.

157. As a direct and proximate result of Charter's conduct, Crawford suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV:  FAILURE TO ACCOMMODATE UNDER R.C. § 4112.02

158. Crawford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

159. Crawford requested accommodations from Charter to assist with her disability, including requesting that people not walk or sneak up behind her or stand over her shoulder. Crawford also sought a position within a different section of Charter.

160. Crawford's requested accommodations were reasonable.

161. There was an accommodation available that would have been effective and would have not posed an undue hardship to Charter.

162. Charter failed to engage in the interactive process of determining whether Crawford needed an accommodation.

163. Charter failed to provide a reasonable accommodation.

164. Charter violated R.C. § 4112.02 by failing to provide Crawford a reasonable accommodation.

165. As a direct and proximate result of Charter's conduct, Crawford suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: FAILURE TO ACCOMMODATE UNDER AMERICANS WITH DISABILITY ACT, 42 U.S.C. § 12101 *ET SEQ*.

166. Crawford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

167. Crawford requested accommodations from Charter to assist with her disability, including requesting that people not approach or sneak up behind her or stand over her shoulder. Crawford also sought a position within a different section of Charter.

168. Crawford's requested accommodations were reasonable.

13

169. There was an accommodation available that would have been effective and would have not posed an undue hardship to Charter.

170. Charter failed to engage in the interactive process of determining whether Crawford needed an accommodation.

171. Charter failed to provide a reasonable accommodation.

172. Charter violated the ADA by failing to provide Crawford a reasonable accommodation.

173. As a direct and proximate result of Charter's conduct, Crawford suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VI: RETALIATION IN VIOLATION OF FMLA

174. Crawford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

175. During her employment, Crawford utilized FMLA leave.

176. After Crawford used her qualified FMLA leave, Charter retaliated against her.

177. Charter retaliated against Crawford by terminating her employment.

178. Charter willfully retaliated against Crawford in violation of 29 U.S.C. § 2615(a).

179. As a direct and proximate result of Charter's wrongful conduct, Crawford is entitled to all damages provided for in 29 U.S.C. §2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT VII: SEXUAL HARASSMENT

180. Crawford restates each and every paragraph of the Complaint as though it were fully restated herein.

181. Crawford was subjected to unwelcomed sexual harassment in the form of inappropriate sexual comments, gestures, advances, touching, and invitations.

182. Charter created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, gestures, advances, touching, and invitations.

183. As a direct and proximate result of the intimidating, offensive, and hostile environment created and sustained by Charter, Charter repeatedly reported the sexual harassment to the human resources department.

184. Charter's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. §4112.02(A).

### COUNT VIII: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.02(A)

185. Crawford restates each and every prior paragraph of the Complaint as if it were fully restated herein.

186. Throughout her employment, Crawford was fully competent to perform her essential job duties.

187. Charter treated Crawford differently than other similarly situated employees based on her race.

188. Charter violated R.C. § 4112.02(A) *et seq.* by discriminating against Crawford due to her race.

189. On or about February 17, 2020, Charter terminated Crawford without just cause.

190. At all material times herein, similarly situated non-African-American employees were not terminated without just cause.

191. Charter terminated Crawford based on her race.

192. Charter violated R.C. § 4112.01 *et seq.* when it terminated Crawford based on her race.

193. As a direct and proximate result of Charter's conduct, Crawford has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **COUNT IX: RACE DISCRIMINATION IN VIOLATION OF 28 U.S.C. § 2000e *ET SEQ.***

194. Crawford restates each and every prior paragraph of the Complaint as if it were fully restated herein.

195. Throughout her employment, Crawford was fully competent to perform her essential job duties.

196. Charter treated Crawford differently than other similarly situated employees based on her race.

197. Charter violated 28 U.S.C. § 2000e *et seq.* by discriminating against Crawford due to her race.

198. On or about February 17, 2020, Charter terminated Crawford without just cause.

199. At all material times herein, similarly situated non-African-American employees were not terminated without just cause.

200. Charter terminated Crawford based on her race.

201. Charter violated 28 U.S.C. § 2000e *et seq.* when it terminated Crawford based on her race.

202. As a direct and proximate result of Charter's conduct, Crawford has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **COUNT X: HOSTILE WORK ENVIRONMENT ON THE BASIS OF DISABILITY DISCRIMINATION**

203. Crawford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

204. During her employment with Charter, Crawford was subjected to offensive and harassing conduct by Charter based on her disability of PTSD.

205. Charter knew or should have known of the harassing conduct against Crawford.

16

206. Charter condoned, tolerated, and ratified the harassing conduct.

207. The harassing conduct was severe and pervasive.

208. The harassing conduct was offensive to Crawford.

209. The harassing conduct interfered with Crawford's ability to perform her job duties.

210. The offensive and harassing conduct created a hostile and abusive work environment for Crawford.

211. The offensive and harassing conduct created a hostile and abusive work environment for the reasonable person similarly situated to Crawford.

212. As a direct and proximate result of the offensive and harassing conduct, Crawford suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT XI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

213. Crawford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

214. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

215. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

216. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files,

institutes, or pursues a workers' compensation claim." (*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

217. Charter's termination of Crawford jeopardizes these public policies.

218. Charter's termination of Crawford was motivated by conduct related to these public policies.

219. Charter had no overriding business justification for terminating Crawford.

220. As a direct and proximate result of Charter's conduct, Crawford has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

221. Crawford restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

222. Charter intended to cause Crawford emotional distress or knew that its acts or omissions would result in serious emotional distress to Crawford.

223. Charter's conduct, such as supervisors standing over Crawford's shoulder knowing that such actions would aggravate her PTSD, was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

224. As a direct and proximate result of Charter's acts and omissions as set forth above, Crawford has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

225. As a direct and proximate result of Charter's conduct and the resulting emotional distress, Crawford has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Crawford requests judgment against Defendant and for an Order:

(a) Requiring Defendant to restore Crawford to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge Crawford's personnel file of all negative documentation;

(b) Awarding against Defendant compensatory and monetary damages to compensate Crawford for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount to be determined at trial;

(c) Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff in an amount to be determined at trial;

(d) Awarding pre-judgment and post-judgment interest as provided by law;

(e) Awarding reasonable attorneys' fees and non-taxable costs for Crawford's claims as allowable under law;

(f) Awarding the taxable costs of this action; and,

(g) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney for Plaintiff Paula Crawford*

## **JURY DEMAND**

Plaintiff, Paula Crawford demands a trial by jury by the maximum number of jurors permitted.

> */s/ Trisha Breedlove*_____
> Trisha Breedlove (0095852)
> **THE SPITZ LAW FIRM, LLC**